Alright we're going to call the next case 25-375 Daniel Groisman v. Jeffrey Zwick and please the court. Yes and counsel I understand you would like to reserve three minutes for rebuttal is that right? Yes your honor. You may proceed. Thank you your honor. Your honor my name is Joseph Niman I represent the plaintiff and appellant Daniel Groisman a citizen of Argentina. We believe that Mr. Groisman's right to a trial has been defunct by the improperly by the lower court. I'm sorry I couldn't quite hear you could you tilt the microphones up you said his right to trial has been what? Defunct by the lower court's ruling granting summary judgment to the defendant Jeffrey Zwick. The we will demonstrate that we believe our briefs demonstrate that there was a plethora of evidence presented on behalf of the plaintiff that would give reasonable inferences a jury-made draw to find that he either intentionally aided and abetted his client Mr. Feller in his fraud to Daniel Groisman or that he turned a willful eye. Why don't you Mr. Zwick was advised by his client that the money that was sitting in his trust account which according to testimony by Jeffrey Zwick he believed belonged to Mr. Feller in fact did not. How does that make something into a fiduciary duty under New York law? Under New York law. Give me a case that says that. If you know that the money in the escrow account belongs to somebody else that you have a fiduciary duty to that somebody else give me a case. I don't have the case off. We're dealing with New York law here right? Yes we are dealing with. So we need a case or perhaps a statute that supports your position and tell us what that is. When you're holding money. Yeah no no I'm saying what is the authority I understand the proposition you're proposing to us and I'm saying how do I what is the basis for your argument that that is in fact what New York law says because anybody can argue anything the question is whether that's the law. So give me a case or a statute that says you're right. Well maybe while you're looking for that we have the Shapiro versus McNeil case right? Okay. In that case the attorney did know that it came from somebody else but believed that his client he took the money on behalf of his client and thought that the client had lawful authority over it and the court of appeals says that there was no fiduciary relationship right? Yes. So in this case he doesn't find out he thinks it's just his client's money until two days before the transaction right? Correct. And then at that point he finds out that it belongs to Groisman but he's presented with an agreement purportedly signed by Groisman that says that it's all part of an investment an authorized investment that the client is going to undertake and so there's no reason to think that he's holding the money for any other purpose than to facilitate the client's legitimate activities right? Unlike Shapiro the funds here were known to the that to the attorney that they did not belong to him. In Shapiro he did not the lawyer had no reason to believe that the funds were not belonging to the client at that point. In addition Shapiro says plaintiff did nothing to put the attorney on notice that he intended to retain entitlement to any of the proceeds of the checks. Well isn't that true here as well? I mean did your client say anything to Zwick whatsoever? Well other than to wire the money to the the caller law firm at Mr. Feller's direction. It might be a problem if Feller hadn't already put Zwick on notice that the funds belong to plaintiff. In Shapiro they didn't do that. In Shapiro the attorney believed the funds belonged to that client. Here he put on notice that they don't belong to him. Why would you think that the is there any authority in New York law for saying that we could distinguish Shapiro because rather than somehow believing that the money had already been transferred hook line and sinker to the client and that's different from the lawyer believes based on a representation from his client and what purports to be a written document that the money was whoever owned the money the money was in that account to be used at the direction of Feller. If you're going to rely on the document the purported operating agreement then you have to read the operating agreement. The operating agreement A is not signed by Feller. B, Feller's not a party to that document. It doesn't authorize Feller to do anything. Feller's not even mentioned in that document. The only person mentioned it is Feller. So what's the argument based on this document? So you're not saying that the document is so ridiculous the only explanation is that the lawyer must have been in cahoots with with Feller to do the fraud right? You're just saying he should have looked at the document and it should have raised enough red flags that he should have realized that something fishy was going on. Yes and no. I mean the yes is certainly enough red flags are being raised when you look at a document that you are relying upon to give your client agency over certain money when it doesn't in fact do that. There's nothing in that document that gives Feller any Well the reason you're saying it doesn't give him agency is because of these defects in the document right? The defense and the fact that he's not in the document. But his wife is right? Well I don't know maybe there's a course of dealing with you I mean like so if you would assume that the husband has a proxy for the wife and they work together or what they communicate or whatever like that would cure the problem. It's not that it's so preposterous that a relative might be on the document that it must be that anybody would notice the whole thing was a blatant fraud and the only explanation is that the lawyer was part of generating the fraudulent document right? You're saying a reasonable attorney would have looked at this and said you know this is pretty fishy. Yes and there's not a whole lot to that he could that he didn't he did nothing. But that sounds like that sounds like negligence. Well we're not we're not claiming negligence. I know you're not claiming it but that sounds like what it is that is the facts that you're asserting sound like negligence. A reasonable lawyer would have been suspicious about this. On the other hand what the money is for is buying a property in New Jersey and the document purports to be Groisman's creating an LLC with Feller's wife as the nominal co-party in order to purchase that very property. There are a number of other issues with that. There's nothing the again when we point out in our brief that there were that and all the operating agreements that Feller had regarding the any properties it was always prepared by Zwick. All of a sudden there's a document there's a purported LLC operating agreement that Zwick doesn't know anything about which we also say is problematic because he in fact was the one that ordered. It may be problematic but we're still looking for two things either a one of two things either a fiduciary duty owed by Zwick to Groisman and the problem is that Groisman agrees that he never thought that Zwick was his lawyer. He never spoke to Zwick or anyone else but Feller in connection with his transactions. He had no engagement letter from Zwick. He had no written escrow agreement. He had no written or oral agreement with Zwick that this money was being sent to be held by him for to wait for further instructions from Groisman. None of that happened. That makes it difficult for me in light of the Shapiro case to say that New York would recognize a fiduciary duty. If you also when you look at Shapiro, Shapiro also talks about the fact that nothing here would have changed if in fact the lawyer did advise the person of the fact that he was giving money out because he said that they wanted that money to go to that person. Here there can be no dispute that had Zwick notified Groisman that his three million dollars was going into a deal when and the evidence is there's a plethora of evidence that at that point in time Groisman is being told by Feller that his money's in Brooklyn in a deal in Brooklyn. So if in fact he would have told him that your money's going into Rio Vista in New Jersey, obviously we said no no no no no wait my money's in Brooklyn. So and that's how how the fraud was perpetrated. But isn't that a fraud by Feller? It is. So then the question would have to be if you're saying there's an the aiding and abetting issue requires that there be knowledge by Zwick that what he's doing is helping that fraud. Correct. Not just negligence. No, correct. We use but the jury can infer when all of this is put together. Any one of these things by and of themselves may not rise but then all together there is a plethora. Let's the fact that if you look at what he did after, after the Rio Vista closing, he knows he's his fiduciary, he has his money, yet he doesn't tell him anything about the fact that the money went somewhere. Why wouldn't he do that? A reasonable jury could infer because he knows that Feller is doing improper things and he doesn't want anything to do with Groisman. Why if you're a starting a new real estate practice and you have somebody that just invested three million dollars in a real estate deal, you're not going to want to make a connection with him? Of course he would. Yet he doesn't do that. And now and finally and and and what I think most importantly. You're asking why he would obviously want to make a connection with Groisman, but why wouldn't an equally or maybe more plausible explanation be he was just acting on behalf of his client Feller and was not really interested in you know providing legal services to Groisman? That could be, but again I believe that would be for a jury to decide after they hear. But why is the jury to decide? So like I guess it has to be more than just a sheer possibility. Like I don't think it has to be actual knowledge right of the fraud as opposed to just red flags and professional negligence. So why is it even more plausible that he must have known that Feller was doing something fraudulent as opposed to Feller is his client. He's acting at the behest of Feller. He sees documents that seem legitimate. Groisman has never said I have conditions on how my money is to be in agreement with Zwick at all. Because when Zwick met Eisen, Norman Eisen, and he approached Zwick and said what did you do with Mr. Groisman's money? And Zwick is obviously taken aback. He's totally surprised by that. And he says to him, he says I have his written permission to do with those funds. So if he's telling him he has his written permission, obviously he in his mind believes that he needed his written permission. Otherwise why would he say that? And well maybe the reason he said it is because he was presented with a document that purported to be written permission, right? Well that's what he's saying. But again you have to look at the document. It doesn't it's not it doesn't in any way give him permission to do that. And and the date of the document when and when the money came in are vastly apart. There are just too many things here that when if you're talking about granting summary judgment when the reasonable inferences are supposed to go against the non movement. There's just a plethora of reasons here. Okay well I think we've heard your list of reasons. You've reserved three minutes of rebuttal. Let's hear from counsel for the appellees. Attorney, is it Mascia? Mascia. Okay. May it please the court. Henry Mascia, Luke and Radler attorneys for the defendants, appellees Jeffrey Zwick and Jeffrey Zwick and associates. I just have two points to make today your honor. The first is that there was no fiduciary duty here on the part of Zwick to Groisman. New York courts do not impute a fiduciary duty to parties who did not agree to such a relationship. And in this case there was no retainer agreement. There was no escrow agreement. Groisman never even spoke to Zwick. In addition to that, Mr. Groisman admitted on the record on pages 135 and 136 of the appendix that he designated Feller to speak on his behalf to Zwick. So that's why my client had every reason to believe Zwick regardless of whether his name was on the operating agreement. Zwick's only contact for this transaction was Mr. Feller. He's the one who told him that the money was coming in to the escrow account. Does it matter that at some point Mr. Feller says the money came from Groisman? I'm sorry? Does it matter that at some point Feller tells Zwick that the money came from Groisman? No, not at all. There's no case in New York law that says that mere suspicion can create the fiduciary duty. Just the opposite. Merely suspicion. So he would have knowledge that he was holding the money of somebody else besides Feller. That's right. That's right. But Feller was his point of contact and Feller was telling him where the money was supposed to go. He had every reason to believe this client and New York courts do not expect attorneys to create a fiduciary relationship with someone that they've never even spoken to. Not an email, not a phone call, not a text message, nothing. So my first point is that Zwick did not have a fiduciary duty to Groisman and any finding that they did would be a radical departure from New York law. On the second point is the aiding and abetting fraud. In order to have an aiding and abetting fraud cause of action, there has to be some facts from which a jury could infer that Zwick had actual knowledge of Feller's fraud. And the factors that this court looks to are motive and indications of conscious behavior. Those are two of them. And there's nothing to suggest that Zwick had any motivation. He was representing his client. He didn't have any other motivation for engaging this fraud. There's no facts to support an inference that Zwick knew that Feller had told Groisman that the funds were going to Brooklyn, but then they were really going to New Jersey. There's no way that Zwick could have known any of that. He didn't know whether, what Feller had told him. Mr. Nyman points out defects in the operating agreement that was shown to Zwick. So maybe you would say that this case is not like what I'm about to describe, but like in principle it could be that the operating agreement was so ridiculous that the only explanation for somebody relying on it would be that they knew about the fraud. So if the operating agreement was written in crayon and full of like scribbles and doodles, you would say, well the lawyer would have known that like that can't be a legitimate transaction, right? Surely there's some theoretical possibility that there could be a case like that. So why is this not that case? Why was Zwick entitled to just take that document at face value? Because Feller had told, Feller had told him that he had Groisman's permission to speak for him and that he had the operating agreement and it's entirely reasonable that he would have also had Malka Feller's permission to speak for her as well. He specifically told Zwick I'll get you Malka Feller. And they had done this kind of thing before. And they had done it before. So there's no reasonable inference a jury could draw from those facts that would lead to the conclusion that Zwick knew that that Feller had told Groisman, well actually your money's going to Brooklyn, not New Jersey. That would just be wild speculation, not a reasonable inference. And so I'll just conclude that at the end of the day, Groisman just made a poor business decision here in trusting Feller. He trusted him completely and but that doesn't create a fiduciary duty on the part of Zwick. And there's nothing in the record to suggest that Zwick knew whether Groisman's funds were supposed to go to a project in Brooklyn or New Jersey. That's the end of the case. All right. Thank you very much. Mr. Nyman, you've reserved three minutes for rebuttal. We will keep it tight. Thank you, Your Honor. When Mr. Eisen approached Mr. Zwick and he says to him, I have his written permission, and when you then try and buttress that by looking at the agreement as giving him his written permission, it's just not believable. It's not believable that he relied on that document as his agency. He doesn't, there's nothing there that says that. And now you're talking about two days. But why is it not believable? I mean, it's missing the signature of his wife, but it does not seem, it seems like the reasonable inference would be that the lawyer would understand that the guy has the authority of his wife, right? It's not like it's some other third party that needs to sign the document. But there's nothing in that document that gives to act on behalf of... It purports to be a document that Royceman signed that authorizes the use of the funds for this project in New Jersey, right? Not exactly. I mean, that's a bit of a stretch to say that that's where, that the agreement, in fact, authorizes that money to go into that deal when, in fact, there's no operating agreement of the other LLC that's mentioned in that agreement. That doesn't exist. There's no document showing that. There's another LLC mentioned there. There's no document there. And to say that I'm going to, I have his written permission, when, in fact, you don't have his written permission, why are you lying to him? Why do you not, why not when the deal closes, everything's fine and you believe everything went smoothly, why wouldn't you send Mr. Royceman some, the documents? You put in 87% of the capital on that deal. You were the attorney and you took that money and gave it to them. Why did you not forward it to Mr. Royceman? Why did you not contact Mr. Royceman? Now, you could suggest that he had no reason to because because Feller was his client, but he did have, he took his money and put it there. But all the, according to the operating agreement, all the decisions are supposed to be made by the manager. Malky Feller? Right. Feller, in other words. No, Malky Feller. Yeah, all right. But one thing it doesn't say is Royceman. Correct. So what is the, I mean, why would that not be construed? You know, of course, if you're dotting all your I's and crossing all your T's, this isn't the way things should be done. But if we're talking not about negligence, but about evidence that there was a knowing fraud, isn't the whole issue here whether Royceman authorized this stuff? It's not whether, it should have been the wife, not the husband who makes the decisions. The one thing that is clear on the base of the document is that Royceman is a passive investor in this, assuming he really signed it. That's what he's doing. Again, when you add to totality, when you're talking about, we're talking about $3 million that sat in an escrow account. Yeah, we're talking about $3 million that some guy just sent to another country into an account of a lawyer that he had no relationship with. If that's the way the guy conducts business, I don't see why it's a stretch to say that he trusts Fellers, you know, to have the authority from his wife or something like that. The fact that it's $3 million just shows what a crazy thing this was to do in the first place. We don't disagree with the fact that he made mistakes and should not have trusted Mr. Feller the way he did. That does not excuse the actions of Mr. Zwick when, in fact, a jury may not necessarily believe what he says, given all of the evidence that's been presented. Okay, we have your argument and we will take the case under advisement. Thank you both.